**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
*Caption in Compliance with D.N.J. LBR 9004-1(b)*
SAUL EWING LLP
Turner N. Falk, Esquire
1735 Market Street, 34th Floor
Philadelphia, PA 19103
Office: (215) 972-7777
turner.falk@saul.com

- and -

BINDER MALTER HARRIS & ROME-BANKS LLP
Julie Rome-Banks, Esquire (*pro hac vice* forthcoming)
1625 The Alameda, Suite 101
San Jose, CA  95126
Office: (408) 295-1700
julie@bindermalter.com

*Counsel for DFDJ Sugar Bear, Inc.*

| | |
|---|---|
| In re:<br><br>UNITED SITE SERVICES, INC., *et al.,*[3]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-23630 (MBK)<br><br>Jointly Administered |

**DECLARATION OF TIMOTHY PROSCHOLD IN SUPPORT OF OBJECTION TO**
**CURE CLAIM AMOUNT BY CREDITOR AND LESSOR DFDJ SUGAR BEAR, INC.**

I, Timothy Proschold, hereby declare:

1.      I am a real estate broker, duly licensed by the State of California and in good standing doing business under the name Luxuriant Realty Inc. I am also the property manager for

---

[3]      The last four digits of the tax identification number of United Site Services, Inc. are 3387. A complete list of the Debtors in these chapter 11 cases (the "Chapter 11 Cases"), with each one's tax identification number, principal office address and former names and trade names, is available on the website of the Debtors' noticing agent at www.veritaglobal.net/USS. The location of the principal place of business of United Site Services, Inc., and the Debtors' service address for these Chapter 11 Cases is 2487 W Navigator Drive, 3rd Floor, Meridian, ID 83642.

57592367.3 04/01/2026

Creditor and Lessor DFDJ Sugar Bear, Inc. ("Lessor") and make this Declaration on my client's behalf.

2.      I have personal knowledge of the matters set forth herein and could testify as follows.

3.      In my capacity as a property manager to the Lessor, I have access to, and I am familiar with, the books and records kept by the Lessor.  These books and records have been generated, recorded and compiled in the ordinary course of business of the Lessor and in my role as property manager.  Further, these documents were prepared at the time, or near the time that the information was received or the events and transactions actually took place.  It is my standard operating procedure to preserve these documents in a place of safekeeping on my business premises.  I have personal access to these books and records and their continued safekeeping is maintained under my direction and supervision.

4.      I understand that: Lessor is the successor in interest to the non-residential real property lease with the Debtor for the real property located at 3408 and 3200 Hillcap Avenue, San Jose, California (the "Premises").   Lessor's predecessor in interest originally entered into a Commercial Lease with the Debtor dated August 12, 2005 (as amended, the "Lease") which was thereafter amended and extended on December 8, 2014 pursuant to a First Amendment to Lease Agreement (the "First Amendment").  Most recently, on August 1, 2025, the Debtor and Lessor further amended and extended the Lease pursuant to a Second Amendment to Lease Agreement (the "Second Amendment").  True and correct copies of the original Lease, the First Amendment and the Second Amendment are attached as **Exhibits A through C** respectively and are incorporated herein by reference.

2

57592367.3 04/01/2026

5.      Pursuant to the Lease at Section 10, in addition to payment of monthly base rent and property taxes, the Debtor was also obligated to pay promptly for all heat, electric light, power, telephone, gas, water, garbage, cable and other services of whatever kind and nature furnished to or used or consumed in the Premises during the term of the Lease.  Ex. A at 4.  Pursuant to the Lease at Section 40, such additional obligations under the Lease are considered to be additional rent owed by the Debtor.  Ex. A at 19.

6.      Pursuant to the Lease, the Debtor is also obligated at its cost to maintain and keep in good condition, order and repair all of the Premises.  Pursuant to Section 15 of the Lease, this obligation extends to the following:

> The Lessee at its cost shall maintain and keep in good condition, order and repair all of the Premises including but not limited to the electrical, plumbing, air conditioning and heating systems roof, roof membrane, fencing, pavement, and the interior or exterior condition of the building. If Lessee fails to perform Lessee's obligations under this paragraph or under any other paragraph of this Lease, Lessor may at Lessor's option enter upon the Premises after ten ( 10) days prior written notice to Lessee (except in the case of emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf and put the Premises in good order, condition and repair, and the cost thereof together with interest thereon at the maximum rate then allowable by law shall be due and payable as additional rent to Lessor together with Lessee's next Base Rent installment. On the last day of the term hereof, or on  any sooner termination, Lessee shall surrender the Premises to Lessor in the same condition as received, ordinary wear and tear excepted, clean and free of debris. Lessee shall repair any damage to the Premises occasioned by the installation or removal of its trade fixtures, furnishings and equipment.

Ex. A at 5.

7.      The Debtor repeatedly fell behind in maintaining the Premises and in completing critical repairs.  As set forth in the First Amendment, the parties agreed that certain repairs and deferred maintenance which were the Debtor's obligation as the Lessee, would be undertaken by the Debtor based upon a "Work Letter" attached as Exhibit A to the First Amendment.  The required repairs and deferred maintenance discussed in the Work Letter confirmed the Debtor's obligation to "remove and replace damaged areas of the parking lot, Seal Coast and Re stripe the

3

parking lot" every 3 years with completion deadlines stated as August 1st of 2015, 2018, 2021 and 2024.  *See* Ex. B at 3-4.

8.      As also provided on page 3-4 of the First Amendment, specifically in the Work Letter, in the event the Debtor fails to perform any repair obligation under the Work Letter or fails to timely reimburse Lessor for amounts required to be paid by Lessee, "without limiting any other remedies available to Lessor, under the Lease, at law or in equity, Lessor shall be entitled to," perform such repairs or improvements itself, and deduct the cost of such performance and unpaid amounts owed to Lessor from any rental obligation of the Debtor under the Lease. *Id*.

9.      As set forth in the Second Amendment, the Lease presently is set to expire on July 31, 2026 and includes an option to extend the term for one additional year which must be exercised by notice received by Lessor not less than ninety (90) days prior to the expiration of the current term.  Ex. C at 1.

10.     The Lease at Section 32 also generally provides that in the event the Debtor as Lessee fails to perform any provision of the Lease besides failing to pay base rent or abandonment and vacating of the Premises, then the Debtor must cure such default within 10 days.  Lessor's remedies under the Lease are cumulative in addition to any remedies now or later allowed by law. Ex. A at 14.

11.     The Lease at Section 40(n) provides that the Lease shall be governed and interpreted solely by the laws of the State of California.  Ex. A at 20.

12.     The Debtor breached the Lease repeatedly by its failure to properly maintain and repair the Premises.  Some of these breaches include the specific requirement in the Lease that the Debtor maintain and keep in good condition, order and repair and repave the blacktop.  The First Amendment also provided specific dates by which the blacktop would be repaved and repaired.

The Debtor has not repaved the blacktop since at least 2015 notwithstanding the general requirement to do so in the Lease and explicit requirements to do so in First Amendment.

13.    In addition, I understand that over the course of the Debtor's tenancy, there have been multiple serious fires at the Premises, including in 2020 and most recently on or about August 6, 2022.  The damages from these fires extended to more than just the Debtor's portable toilets that melted.  The Debtor is also obligated to maintain proper tree trimming at the Premises, including trees from adjacent properties that overhand the Premises.  The need for proper and regular tree trimming is underscored by the multiple fires during the Debtor's tenancy and also premises liability for falling tree limbs.  It is for this reason that the requirement for proper tree trimming is enforced by Lessor to require that the Debtor must regularly undertake so ensure that there is no damage to the Premises.  Moreover, the trees which overhang the Premises are predominantly eucalyptus trees, which are commonly known to be highly flammable due to their high oil content, shedding bark, and large amounts of flammable leaf litter. These trees are also highly susceptible to breakage during windstorms, causing the possibility of injury or loss of life to persons on the property.

14.    In December 2022, the parties conducted a mutual inspection of the Premises. Following that inspection, Lessor provided the Debtor with a copy of the repairs that the Debtor was obligated to undertake pursuant to the Lease. This list included, among other things, that all blacktop be repaired and sealed, that landscaping be trimmed, and that the roof needed repairs for leaks for the past 2 years.  A true and correct copy of the list of repairs required following the inspection is attached as **Exhibit D**.

15.    The damages from the fires also extended into areas of the Premises where the fires melted or otherwise destroyed the blacktop and ruined some of the fencing that surrounds the

5

Premises.   The fences surrounding the Premises have also been repeatedly damaged by the Debtor's trucks backing up and hitting the fences on the Premises.   The Debtor therefore committed multiple serious breaches of the affirmative obligation to maintain and repair the Premises as a result of the fires, as well as regular wear and tear from the Debtor's use of the Premises that was not repaired by the Debtor.   These numerous breaches of the Lease involved the failure of the Debtor to maintain and/or repair the following:  (a) the roof of the Premises; (b) a rolling overhead door; (c) repaving of the Premises; (d) repairing and/or replacing the fences on the Premises; and (e) proper trimming of trees located on and/or overhanging the Premises.  Each is discussed in turn below.

16.    Roof and Overhead Door Repairs:  With respect to the roof of the Premises,  the Debtor did not timely undertake repairs to the roof after multiple leaks developed.  The leaks were considerable and were beginning to damage the internal plywood membrane of the Premises. Landlord has a series of emails dating back to June 2023 with various personnel for the Debtor who confirmed the Debtor's obligation to undertake the repair of the roof and yet the Debtor did nothing.  Copies of these emails are included as **Exhibit E**.  As a result of the Debtor's delays and failure in failing to maintain and repair the roof membrane and following considerable communications and reminders, Lessor determined that it must undertake the repair of the roof to avoid further ongoing damage to the building on the Premises.  Although Lessor could have simply declared a default and issued a notice to the Debtor requiring the Debtor to perform the repairs within 10 days, Lessor instead opted to exercise its additional rights and remedies under Section 15 of the Lease to undertake the repairs directly.  The roof was therefore replaced by roofing contractor Fast Track Steel Inc. at a cost of $91,256.00 on or about October 23, 2023 as reflected in the invoice attached as **Exhibit F**.  Lessor paid the roofing contractor upon completion of its

6

services and thereafter forwarded the invoices to the Debtor for reimbursement.  As of the date of this Opposition, the Debtor has failed to reimburse Lessor of the repair of the roof.

17.     During the course of replacing the roof, contractor Fast Track Steel  discovered that the Debtor had failed to adequately repair and maintain a rolling overhead door located in the Premises.  The state of disrepair of the door was such that it was straining the surrounding walls and roof.  At Lessor's request, the same contractor therefore repaired the rolling overhead door as well, at a cost of $4,550.00, as reflected in the October 23, 2023 invoice attached as **Exhibit G**. Lessor paid the contractor upon completion of services and thereafter forwarded the invoice to the Debtor for reimbursement.  Maintaining the rolling overhead door is also part of the Debtor's general obligation under the Lease to repair and maintain the Premises.  As of the date of this Opposition, the Debtor has failed to reimburse Lessor for the repair of the rolling overhead door.

18.     Repaving:  The Lease also obligates the Debtor to maintain and repair the paved areas of the Premises.  As also detailed in the First Amendment, the Debtor agreed to a periodic schedule for repaving the blacktop in the outdoor parking and storage lot areas of the Premises every 3 years.  However, the Debtor failed to maintain the blacktop and did not repave even the melted, crumbling and broken areas.  Lessor's numerous efforts to get the Debtor to address this deficiency and breach of the Lease were to no avail and the Debtor continued to ignore the obligation to maintain and repair the blacktop.  As a result, on January 28, 2026, I obtained a written estimate for the paving required of $105,116.00 from licensed contractor K&M Asphalt Maintenance Specialists Inc. as reflected in **Exhibit H**.

19.     Fence Repair:  As noted above, when fires broke out at the Premises, there was damage to both the blacktop and to the fences along the outer perimeter of the Premises.  The Debtor's trucks also repeatedly damaged the fences along the outer perimeter of the Premises when

7

57592367.3 04/01/2026

backing up trucks and hitting the fencing.  The Debtor did not undertake the repairs as required by the Lease.  On or about September 7, 2022, as a result of the fires, Landlord first brought this deficiency and breach of the Lease to the Debtor's attention.  After the Debtor's repeated failures to repair the fencing, on May 13, 2024, I obtained a written estimate for replacement of the fencing of $39,220.00 from licensed contractor ABC Steel Fence, LLC, as reflected in **Exhibit I**.

20.     Tree Trimming:  Maintaining a clean perimeter around the Premises is critical to reducing potential fire hazards on the Premises.  This includes trimming all trees and shrubs located inside the Premises, along with any vegetation which overhangs onto the Premises, even if located on an adjoining property.  The Debtor did not undertake such maintenance of vegetation and tree trimming as required by the Lease.  On or about March 28, 2024, through Landlord's Real Estate Broker, Landlord first brought this deficiency and breach of the Lease to the Debtor's attention.  As a result of the Debtor's failure to promptly cure this additional breach of the Lease, on May 29, 2024, on behalf of the Lessor, I obtained a written estimate for required tree trimming of $75,000.00 from licensed contractor Majestic Tree Service as reflected in **Exhibit J**.

21.     On March 19, 2026, on behalf of Lessor, I conducted a physical inspection of the Premises as authorized by Section 17 of the Lease, for purposes of determining if the Debtor was in compliance with the Lease.  Section 17 allows Lessor to inspect the Premises on reasonable notice during normal business hours.  *See* Ex. A at 6.  The results of the inspection confirmed that the Debtor has not undertaken the repairs and/or maintenance of the blacktop, fences, and trees which are the Debtor's obligation under the Lease. A copy of the March 19, 2026 inspection report is attached as **Exhibit K**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

8

Dated: March 31, 2026

Respectfully submitted,

/s/ Timothy Proschold
Timothy Proschold

57592367.3 04/01/2026