# **Exhibit A**

## COMMERCIAL LEASE

### 1. PARTIES

This Lease is made this 12th day of August, 2005, between ACME & SONS SANITATION, INC, a California corporation (C0913500), hereinafter called "Lessor" and UNITED SITE SERVICES OF CALIFORNIA, INC., a California corporation, hereinafter called "Lessee".

### 2. PREMISES

Lessor, for and in consideration of the rents, covenants and agreements hereinafter contained on the part and on behalf of the Lessee to be paid, kept and performed, does hereby lease and demise unto said Lessee, and said Lessee does hereby hire and rent from said Lessor, the following described premises situated at 3408 Hillcap Avenue, San Jose, County of Santa Clara, State of California, with zip code 95136, consisting of: approximately 26,250 + or - square feet of office and shop in a concrete tilt-up building on approximately 4.03 + or − acres (APN 462-17-002) and an adjoining lot of approximately 1.84 + or − acres (APN 462-17-022), plus various other temporary structures, as further described in Exhibit "A" , which is attached hereto and made a part hereof.("Premises")

### 3. TERM

The term of this Lease shall be a tenancy of ten (10) years, commencing August 12, 2005 (Commencement Date) and shall continue until July 31, 2015 so long as Lessee is not in default as to any provision of the Lease. In the event Lessee is in default, the provisions of Paragraph 32 shall apply.

### 4. MONTHLY BASE RENT

(a)    **Base Rent.** Lessee shall pay to Lessor as monthly rent, without deduction setoff, prior notice or demand except as hereinafter provided, the sum of Twenty-Six Thousand Eight Hundred and Eighty-Six Dollars ($26,886.00) per month for each month of the Lease term (Base Rent). All rents shall be paid on the first day of each month of the Lease term, commencing September 1, 2005 and continuing during the term.

(b)    **Annual Rent Adjustments**: Base Rent shall be increased by three percent (3%) on every twelve (12) month anniversary from the Commencement Date.

Lessee shall cause payment of Base Rent to be received by Lessor in the form of lawful money of the United States on or before the day on which it's due, without offset or deduction (except as specifically permitted in this Lease). All rents shall be paid to Lessor at the address to which notices to Lessor are given in accordance with Paragraph 34 below. Rent for any period during the term hereof which is for less than one month shall be a prorata portion of the monthly installment.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

5.      **SECURITY DEPOSIT**

Currently Lessee has paid a Security Deposit in the amount of $30,000.00, as security for the full and faithful performance by the Lessee of the terms, conditions and covenants of this Lease. Lessee and Lessor agree that the following disposition shall apply to the Security Deposit:

**(a)**   Lessor can maintain the Security Deposit separate and apart from Lessor's general funds or can commingle the security deposit with Lessor's general and other funds.

**(b)**   Lessor shall not be required to pay Lessee interest on the Security Deposit

**(c)**   Lessor's obligation with respect to the Security Deposit are those of a debtor and not a trustee

**(d)**   If at any time during the term hereof Lessee shall be in default in the payment of rents or any portion thereof, or of any sums expressly constituting additional rent, Lessor may appropriate and apply any portion of the Security Deposit as may be necessary to the payment of overdue rent or other sums expressly constituting additional rent.

**(e)**   If at any time during the term hereof Lessee should fail to repair any damage to the Premises leased or any part of the common portions of the complex caused by such Lessee or his agent, employees, invitees or other visitors through lack of ordinary care for a period of greater than 30 days after written demand to make such repairs is served on Lessee by Lessor, then Lessor may appropriate and apply any portion of the Security Deposit as may be reasonably necessary to fund the repair.

**(f)**   If on termination of this Lease for any reason Lessee does not leave the Premises in as good condition as when received by Lessee from Lessor then Lessor may appropriate and apply any portion of the Security Deposit as may be reasonably necessary to put the Premises in such condition.

**(g)**   If on termination of the Lease or incident to any actions to enforce the agreements, terms and conditions of this Lease, it becomes necessary for Lessor to obtain the services of attorneys, sheriffs, or moving and storage firms to secure full possession of the Premises or other legal proceedings, Lessor may appropriate and apply any portion of the Security Deposit as may be reasonably necessary to fund such services. None of the above shall prevent or limit Lessor from bringing suit to recover any and all funds for such costs which may exceed the amount of the Security Deposit.

**(h)**   Lessee agrees to restore the Security Deposit to its original amount should resort to funds be required by Lessor during the period of this lease. Refusal to restore such amount within 15 days after written demand shall be cause for termination of this Lease.

**(i)**   Should Lessor transfer his interest under the Lease in any manner, he or his agent shall do one of the following acts, either of which shall relieve him of further liability with respect to such deposit:  (1)Transfer the portion of such deposit remaining after any lawful deductions, as above, to his successor in interest, and thereafter notify the Lessee by registered mail at the address under this Lease on such transfer, and of the transferee's name and address. On receipt of such remaining deposit, the successor in interest of Lessor shall have all rights and obligations of Lessor holding such deposit with respect to

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

such deposit.  (2)Return the portion of such deposit remaining after any lawful deductions as above have been made.

(j)  The Security deposit shall not be treated by Lessee as in lieu of payment of the last month's Base Rent.

## 6.  REAL PROPERTY TAXES

(a)  **Lessee to Pay All Real Property Taxes and Assessments on Leased Lands and Improvements.** Lessee shall pay before delinquency 100% of real property taxes and assessments levied or assessed against the leased Premises and improvements thereon (APN 462-17-002 and APN 462-17-022) during the term hereof. Lessee shall also pay any assessments levied or assessed by special improvement districts that provide for bonds to be issued thereon with principal and interest thereon payable in installments.

(b)  **Substitute Taxes.** Lessee shall not be required to pay any municipal, county, state, or federal income or franchise taxes of Lessor, or any municipal, county, state or federal estate, succession, or inheritance taxes of Lessor. If at any time during the term the laws concerning the methods of real property taxation prevailing at the commencement of the term are changed so that a tax or excise on rents or any other such tax, however described, is levied or assessed against Lessor as a direct substitution in whole or in part for any real property taxes, Lessee shall pay before delinquency (but only to the extent that it can be ascertained that there has been a substitution and that as a result Lessee has been relieved from the payment of real property taxes it would otherwise have been obligated to pay) the substitution tax or excise on rents. Lessee's share of any tax or excise on rent shall be substantially the same as, and a substitute for, the payment of such real property taxes as provided in this lease.

## 7.  LATE CHARGES

Lessee hereby acknowledges that late payment by Lessee to Lessor of Base Rent and other sums due hereunder will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult and impractical to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed on Lessor by the terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of Base Rent or any other sum due from Lessee shall not be received by Lessor or Lessor's designee with ten (10) days after such amount shall be due then without any requirement for notice to Lessee, Lessee shall pay to Lessor a late charge equal to 10% of such overdue amount which may be treated as additional rent. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of late payment by Lessee. Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's default with respect to such overdue amount, nor prevent Lessor from exercising any of the other rights and remedies granted hereunder. The ten (10) day period is not a grace period. Lessor may make written demand for any rent unpaid on the second day of the month: The late charge shall be in addition to all other remedies available to Lessor. In the event that a late charge is payable hereunder, whether or not collected for three (3) consecutive installments of Base Rent then Base Rent shall, in the discretion of Lessor, become due and payable upon written advance notice to Lessee quarterly in advance rather than monthly notwithstanding any other provision of this Lease to the contrary.

## 8.  BAD CHECK CHARGE

In the event any rent is tendered by check which is, for any reason, dishonored by the maker's financial institution, Lessee shall pay to Lessor $50.00 as reimbursement to Lessor for administrative expense in processing such dishonored check. This charge shall be deemed additional rent and shall be in addition to all other remedies available to Lessor.

## 9.    PERSONAL PROPERTY TAXES

Lessee shall pay, before delinquency, all taxes, assessments, license fees, and other charges that are levied and assessed on Lessee's personal property installed or located in and on the Premises that become payable during the term hereof. On demand by Lessor, Lessee shall furnish Lessor with satisfactory evidence of such payment. If any of Lessee's said personal property shall be assessed with Lessor's real property, Lessee shall pay Lessor the taxes attributable to Lessee within ten (10) days after receipt of a written statement setting forth the taxes applicable to Lessee's property. Such payment shall be deemed additional rent, payable as such on the next date upon which Base Rent becomes due.

## 10.    UTILITY AND ALLIED SERVICES

Lessee shall promptly pay for all heat, electric light and power, telephone, gas, water, garbage, cable-vision and all other services of whatsoever kind or nature furnished to or used or consumed in or about the demised Premises by Lessee during the term hereof

## 11.    PUBLIC LIABILITY AND PROPERTY DAMAGE INSURANCE COSTS

Lessee shall promptly pay all premiums or other costs and expenses for maintaining public liability and property damage insurance as required under the provisions of Paragraph 27 hereof.

## 12.    INTEREST ON DELINQUENT RENT, PERSONAL PROPERTY TAXES AND PUBLIC LIABILITY AND PROPERTY DAMAGE INSURANCE COSTS

Any rent, personal property taxes and insurance charges owing by Lessee hereunder not paid when the same shall become due, shall bear interest from the date the same becomes due until paid at the rate of ten percent (10%) per annum.

## 13.    USE OF PREMISES

The demised Premises are leased to Lessee for the sole and exclusive purpose of operating a construction service provider, for the rental, sale and storage of portable restrooms, sanitation facilities, portable freshwater facilities, temporary power equipment, storage containers, temporary fencing, vehicles and related equipment  and office support pertaining to operating Lessee's business.  Lessee agrees not to use or permit said demised Premises to be used for any other purpose or purposes. If Lessee is unable to use the Premises for the purposes identified in the first sentence of this Section as a result of any zoning or land use laws, regulations or ordinances, then Lessee may, with 30 days notice to Lessor, terminate this Lease without any further obligations hereunder. Lessee shall not do, bring or keep anything in or about the Premises that will cause a cancellation of any insurance covering the Premises.

Lessee agrees not to use or permit to be used, stored, transported to, or maintained on, for however briefly, any "hazardous waste" or "hazardous substance" as defined in accordance with the California Health and Safety Code and/or any federal statute as well as any state or federal judicial

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

decision, other than such limited amounts of material or substances as may be customarily and ordinarily used in Lessee's business operations.

Lessee shall not perform any act or carry on any practices that may injure the Premises or be a nuisance or menace to other Lessees of Lessor or to adjoining property owners.

Lessee shall keep all yard area in good condition and not let material that is scrap or unusable become piled or stored on or about the Premise except Lessee may store equipment, inventory and vehicles as necessary to operate its business. Lessee further shall not let any inoperable motor vehicles of any type, trailers or any structures come to rest, be parked or stored on the Premises for more than 10 days.

**14.    INTENTIONALLY OMITTED**

**15.    REPAIRS AND MAINTENANCE**

**(a)**    Lessee expressly waives the benefits of any statue now or hereafter in effect which otherwise afford Lessee the right to make repairs at Lessor's expense or to terminate this Lease because of Lessor's failure to keep the Premises in good order, condition and repair.

**(b)**    The Lessee at its cost shall maintain and keep in good condition, order and repair all of the Premises including but not limited to the electrical, plumbing, air conditioning and heating systems roof, roof membrane, fencing, pavement, and the interior or exterior condition of the building. If Lessee fails to perform Lessee's obligations under this paragraph or under any other paragraph of this Lease, Lessor may at Lessor's option enter upon the Premises after ten (10) days prior written notice to Lessee (except in the case of emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf and put the Premises in good order, condition and repair, and the cost thereof together with interest thereon at the maximum rate then allowable by law shall be due and payable as additional rent to Lessor together with Lessee's next Base Rent installment. On the last day of the term hereof, or on any sooner termination, Lessee shall surrender the Premises to Lessor in the same condition as received, ordinary wear and tear excepted, clean and free of debris. Lessee shall repair any damage to the Premises occasioned by the installation or removal of its trade fixtures, furnishings and equipment.

**16.    ALTERATIONS AND ADDITIONS**

**(a)**    Lessee shall not, without Lessor's prior written consent, which shall not be unreasonably withheld, make any alterations, improvements, additions or utility installations in, on or about the Premises. Lessee shall make no change or alteration to the Premises without Lessor's prior written consent, which shall not be unreasonably withheld. As used in this paragraph the term "Utility Installation" shall mean junction box/power panels, electrical distribution systems, lighting fixtures and plumbing. Lessor may require that Lessee remove any or all of said alterations, improvements, additions or Utility Installations at the expiration of the term, and restore the Premises to their prior condition. Lessor may require Lessee to provide Lessor at Lessee's sole cost and expense a lien and completion bond in an amount equal to one and one-half times the estimated cost of such improvements to insure Lessor against any liability for mechanic's and materialmen's liens and to insure completion of the work. Should Lessee make any alterations, improvements, additions or Utility Installations without the prior approval of Lessor, Lessor may require that Lessee remove any or all of the same.

**(b)**    Any alterations, improvements, additions or Utility Installations in or about the Premises that

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

Lessee shall desire to make and which requires the consent of the Lessor shall be presented to Lessor in written form with proposed detailed plans. If Lessor shall give its consent, the consent shall be deemed conditioned upon Lessee acquiring a permit to do so from appropriate governmental agencies, the furnishing of a copy thereof to Lessor prior to the commencement of the work and the compliance by Lessee of all conditions of said permit in a prompt and expeditious manner.

**(c)** Lessee shall pay when due all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use in the Premises, which claims are or may be secured by any mechanics' or materialmen's s lien against the Premises or any interest therein. Lessee shall give Lessor not less than ten (10) days, notice prior to the commencement of any work in the premise and Lessor shall have the right to post notices of non-responsibility in or on the Premises as provided by law. If Lessee shall, in good faith, contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend itself and Lessor against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against the Lessor or the Premises upon the condition that if Lessor shall require, Lessee shall furnish to Lessor a surety bond satisfactory to Lessor in an amount equal to such contested lien claim or demand indemnifying Lessor against liability for the same and holding the Premises free from the effect of such lien or claim. In addition, Lessor may require Lessee to pay Lessor's attorneys fees and costs in participating in such action if Lessor shall decide it is to its best interest to do so.

**(d)** Unless Lessor requires their removal as set forth above, all alterations, improvements, additions and Utility Installations (whether or not such Utility Installations constitute trade fixtures of Lessee) which may be made on the Premises shall become the property of Lessor and remain upon and be surrendered with the Premises at the expiration of the term. Notwithstanding the provisions of this paragraph, Lessee's machinery and equipment other than that which is affixed to the Premises so that it cannot be removed without material damage to the Premises shall remain the property of Lessee and may be removed by Lessee subject to the provisions of this lease.

## 17.   LESSOR'S ACCESS

**(a)** Lessor and Lessor's agents shall have the right to enter the Premises without notice in case of an emergency, upon court order or when Lessee has abandoned or surrendered the Premises. Lessor, Lessor's agents and agents or employees of federal, state or local municipalities shall have the right to enter the Premises upon reasonable notice, with entrance during normal business hours from 8:00 a.m., to 5:00 p.m., Monday through Friday, holidays excepted, to make necessary or agreed inspections, repairs, decorations, alterations or improvements, supply necessary or agreed services or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workmen or contractors, or for the purpose of inspecting the Premises for compliance with the Lease. Twenty-four hours shall be presumed to be reasonable notice.

**(b)** Lessor may at any time during the last 30 days of the term hereof place on or about the Premises any ordinary "For Lease" signs, all without rebate of rent or liability to Lessee.

## 18.   SIGNS

Lessee shall not place any sign upon the Premises without Lessor's prior written consent, which shall not be unreasonably withheld, and sign permit approval from the City of San Jose.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

19.   **COVENANT AGAINST ASSIGNMENT AND SUBLETTING**

Lessee agrees not to assign, transfer, mortgage or hypothecate this Lease in whole or in part or any interest therein nor to sublease or sublet the herein demised Premises or any part or portion thereof, either voluntarily or by operation of law without first obtaining the written consent of the Lessor. Lessor shall not unreasonably withhold consent to an assignment or subletting. Failure to consent to an assignment to an assignee that is not at least as financially strong as Lessee shall be conclusively reasonable. A consent to one (1) assignment or subletting shall not be deemed a consent to any subsequent assignment or subletting. The acceptance of rent by Lessor from Lessee or from any other person or entity after a purported assignment or subletting shall not be deemed a waiver by Lessor of any provision hereof. In the event Lessee shall assign, transfer or hypothecate this Lease or any interest therein, or in the event the Lessee shall sublet the whole or any part of the herein demised Premises or in the event that any interest in this Lease shall be transferred by operation of law, or by any proceedings against the Lessee in attachment, execution, judgment, voluntary or involuntary proceedings in bankruptcy, or insolvency of Lessee, or moratorium proceedings in bankruptcy, or otherwise, which in the case of attachment or other proceeding not initiated by Lessee, is not discharged by Lessee in 60 days, then at the option of the Lessor, his successors and assigns, this lease shall immediately terminate. In the event Lessee shall assign or sublet the Premises or request the consent of Lessor to any assignment or subletting or if Lessee shall request the consent of Lessor for any act Lessee proposes to do then Lessee shall pay Lessor's reasonable attorneys' fees incurred in connection therewith, such attorneys' fees not to exceed $2,500.00 for each such request.

20.   **EXEMPTION OF LESSOR FROM LIABILITY**

Lessee hereby agrees that Lessor shall not be liable for injury to Lessee's business or any loss of income there from or for damage to the equipment, goods, wares, merchandise or other property of Lessee, Lessee's employees, invitees, customers, or any other person in or about the Premises, nor shall Lessor be liable for injury to the person of Lessee, Lessee's employees, agents or contractors whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether the said damage or injury results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part or from other sources or places and regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Lessee. Lessor shall not be liable for any damage arising from any act or neglect of any other tenant, if any, of the building in which the Premises are located.

21.   **GENERAL INDEMNITY**

Lessee shall indemnify and hold harmless Lessor from and against any and all claims arising from Lessee's use of the Premises, or from the conduct of Lessee's business or from any activity, work or things done by Lessee in or about the Premises or elsewhere and shall further indemnify and hold harmless Lessor from and against any and all claims arising from any breach or default in the performance of any obligation on Lessee's part to be performed under the terms of this Lease, or arising from any negligence of the Lessee, or any of Lessee's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

thereon and in case any action or proceeding be brought against Lessor by reason of any such claim, Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel satisfactory to Lessor. Lessee, as a material part of the consideration to Lessor, hereby assumes all risk of damage to property or injury to persons, in, upon or about the Premises arising from any negligence or willful Misconduct of Lessee, Lessee's agents, employees, guests and invitees, and Lessee hereby waives all claims in respect thereof against Lessor.

### ENVIRONMENTAL INDEMNITY AND REMEDIATION

In addition to the indemnity obligations set forth in Paragraph 21, Lessee undertakes the following obligations related to Environmental Contamination:

Hazardous Substance Contamination means tetrachloroethylene, also known as perchloroethylene or PCS which is caused to become present on the leased Premises as a result of Lessee's operations on the leased Premises or by the operations on the leased Premises conducted by Lessee's agents, successors or assigns or those acting on Lessee's behalf and which violate applicable federal, state or local laws as in effect during the term of this Lease or any extension thereof. "Covered Contamination" means Hazardous Substance Contamination or other environmental contamination which violates applicable federal, state or local laws as in effect during the term of this Lease or any extension thereof, and which becomes present on the leased Premises as a result of Lessee's operation on the leased Premises or by the operations on the leased Premises conducted by Lessee's agents, successors or assigns or those acting on Lessee's behalf. Definition of Hazardous Substance the term "hazardous substance" shall be interpreted to mean: Any substance, product, waste, or other material of any nature that is or becomes listed, regulated, or addressed under one or more of the following "Hazardous Substance Laws":

(1) The Comprehensive Environmental Response, Compensation, and Liability Act, referred to as "CERCLA," in 42 U.S.C. § 9601 et seq. .

(2) The Hazardous Materials Transportation Act, in 49 U.S.C. § 1801 et seq. .

(3) The Resource Conservation and Recovery Act, referred to as "RCRA," in 42 U.S.C. § 6901 et seq. .

(4) The Clean Water Act in 33 U.S.C. § 1251 et seq. .

(5) The Toxic Substances Control Act, in 15 U.S.C. § 2601 et seq. .

(6) The California Carpenter-Presley-Tanner Hazardous Substance Account Act, referred to as the "HSAA," in Health & Safety Code § 25300 et seq.

(7) The California Porter-Cologne Water Quality Control Act, in Water Code § 13000 et seq.

(8) The California Hazardous Waste Control Act, in Health & Safety Code § 25100 et seq.

(9) The California Safe Drinking Water and Toxic Enforcement Act, in Health & Safety Code § 25249.5 et seq.

(10) The California Hazardous Waste Management Act, in Health & Safety Code § 25170.1 et seq.

(11) Any other federal or state law or local ordinance or other rule concerning hazardous, toxic, or dangerous substances, wastes, or materials.

(12) Any substance, product, waste, or other material that may give rise to liability under any of the laws designated in subparagraphs 1 through 11 or under any other statutory or common-law tort theory.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

(13) Crude oil products, including petroleum.

(14) Asbestos.

(15) Polychlorinated biphenyl.

(16) Fossil fuel combustion wastes, including fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste.

(17) Solid wastes resulting from the extraction and processing of ore.

(18) Cement kiln dust wastes.

**(a)** Lessee shall defend, indemnify and hold Lessor harmless from and against any and all claims, losses, damages, costs (including reasonable attorneys' fees), expenses, liabilities, fines, penalties, administrative and judicial proceedings, judgments and enforcement actions of any kind to the extent that they arise from or are attributable to (1) the presence, or release of Covered Contamination in or from the leased Premises, (ii) the use, generation, storage or treatment of Covered Contamination on or under the leased Premises, (iii) the presence of tanks or other receptacles on or under the leased Premises placed there by Lessee, its agents, successors, assigns or those acting on Lessee's behalf, and (iv) the migration of Covered Contamination from the leased Premises. Notwithstanding the foregoing, or any other provision of this Lease, Lessee shall not be required to indemnify, hold harmless or defend Lessor for any migration to or for the presence upon the leased Premises of any environmental contamination caused by persons/entities other than Lessee, its agents, successors, assigns or those acting on Lessee's behalf.

The foregoing indemnity includes the costs of preparing plans to remediate and remediating (as hereinafter described) any Covered Contamination in full compliance with all applicable laws and regulations within such time period as the appropriate governmental agency having jurisdiction thereover shall require. Lessee shall also defend, indemnify and hold harmless Lessor for any liabilities, damages, losses, claims, costs and expenses (including reasonable attorneys' fees) incurred by Lessor as a result of injury to or death of any person or damage to or destruction of property arising out of Lessee's remediation activities.

**(b)** In the event that during the term of this Lease, or any extension thereof, any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (hereinafter "Remedial Work") is required by any appropriate governmental authority having jurisdiction on account of a release of Covered Contamination in or from the leased Premises, Lessee shall forthwith commence and thereafter diligently prosecute to completion within such time period as the appropriate governmental agency having jurisdiction thereover shall require, all such Remedial Work in compliance with the requirements of any applicable law, regulation or order. All Remedial Work shall be performed by licensed personnel when any governmental regulation or law so requires. All costs and expenses of such Remedial Work shall be paid by Lessee. Lessee shall give Lessor copies of all reports and other information developed during investigation and performance of Remedial Work of any covered Contamination.

**(c)** If Lessor or Lessee receives notice of a claim, demand, or complaint from any third party or from any government agency with jurisdiction for the payment of damages, costs, or expenses for the presence of or the escape, leakage, spillage, discharge, emission or release from the

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

leased Premises into or onto the leased Premises, adjacent land, or any watercourse, of any Covered Contamination, the party receiving said notice shall promptly notify the other. If Lessor first receives notice, Lessor shall notify Lessee of the claim, demand or complaint, and Lessee will proceed diligently after receipt of notice of the Claim to assess and to remediate the Covered Contamination as set forth herein. If Lessee, in good faith, believes that the claimed contamination is not a Covered Contamination as defined in Paragraph 22(a), Lessee shall have the right to challenge such claim, demand or complaint 'in an appropriate forum.

**(d)**   In the event action is taken against Lessor regarding a claim, demand or complaint, or commenced by Lessee to challenge a claim, demand or complaint, Lessor shall, at no cost or expense to Lessor, cooperate with Lessee in the defense thereof.

**(e)**   Lessee shall upon expiration of the term of this lease or any extension thereof, or upon earlier termination hereof, at Lessee's expense, monitor and/or remediate any Covered Contamination as defined in Paragraph 22(a), to the extent validly required by governmental agencies having jurisdiction. In order for Lessee to perform such remediation, Lessor hereby grants Lessee an irrevocable license, commencing on the first day after expiration or earlier termination of this Lease, or any extension thereof, and ending when such Covered Contamination is monitored or cleaned up to the extent validly required by governmental agencies having jurisdiction. In conducting such remediation, Lessee shall use its best efforts not to unnecessarily interfere with Lessor's use of the Premises. Lessor shall not, during the term of the license, conduct or allow to be conducted activities on the Premises that interfere with such remediation.

Lessee shall defend, indemnify, and hold harmless Lessor from any liabilities, damages, losses, claims, costs and expenses ('including reasonable attorneys' fees) incurred by Lessor as a result of injury to or death of any person or damage to or destruction of property arising out of such remediation activities.

## 22.   EARTHQUAKE AND WATER DAMAGE

It is understood and agreed that the Lessor shall not be held liable for any damages to any equipment, goods, property, or effects in, or upon, the herein demised Premises during the term of this Lease caused by earthquake or by water from any source whatsoever.

## 24.   SECURITY MEASURES

Lessee hereby acknowledges that the rental payable to Lessor hereunder does not include the cost of guard service or other security measures, and that Lessor shall have no obligation whatsoever to provide same. Lessee assumes all responsibility for the protection of Lessee, its agents and invitees from acts of third parties.

## 25.   COMPLIANCE WITH ALL LAWS AND REGULATIONS - NUISANCES

Lessee shall not maintain on the demised Premises any nuisances nor use the demised Premises in whole or in part, during the term of this lease, for any purpose or use in violation of any laws, ordinances, rules or regulations of any public authority applicable thereto; and Lessee agrees at all times during the term hereof, to keep and maintain the demised Premises in a clean, tidy and sanitary manner and condition and in compliance with any and all statutes, laws, rules, regulations and ordinances applicable thereto.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

26.     **LESSEE NOT TO SUFFER LIENS**

Lessee agrees not to cause any lien to attach to or encumber the demised Premises or any part or portion thereof during the term hereof. Failure of Lessee to remove any such lien within 30 days of attachment shall constitute a material breach of this Lease.

**27. PUBLIC LIABILITY, PROPERTY DAMAGE, PLATE, DOOR AND WINDO GLASS AND WORKERS' COMPENSATION INSURANCE TO BE MAINTAINED BY LESSEE**

Lessee shall at its own cost and expense take out, maintain, keep in full force and effect throughout the term hereof, in a reputable insurance company or companies authorized to engage in such business in the State of California, (or in the State Workers' Compensation Insurance Fund as to workmen's compensation insurance) the following 'insurance:

(a)     Policy of Public Liability and Property Damage Insurance with a single combined liability limit of not less than $ 2,000,000, and property damage limits of not less than $300,000 insuring against all liability of Lessee and its authorized representatives arising out of and in connection with Lessee's use or occupancy of the leasehold Premises. All public liability insurance and property damage insurance shall insure performance by Lessee of the indemnity provisions of Paragraph 21. Lessor shall be named as additional insured, and the policy shall contain cross-liability endorsements. Lessee shall provide Lessor with written evidence that such insurance is in force. Not more frequently than each year throughout the term and any extended term hereof, if in the considered opinion of Lessor's insurance broker the amount of such coverage is not adequate, Lessee shall increase the coverage to such amount as Lessor's insurance broker shall reasonably deem adequate. Coverage hereunder shall include, but not necessarily be limited to, Premises/operations liability coverage, personal injury liability coverage, contractual liability coverage and broad form property damage liability coverage.

(b)     Glass Insurance - Jointly insuring Lessor and Lessee against all loss or damage to plate, window, skylights and door glass, and specifying coverage for replacement of all stained glass leaded windows on the Premises, if any.

(c)     Workers' Compensation Insurance insuring the Lessee as employer against liability for injury or death to employees of Lessee.

All such policies shall be nonassessable and shall contain language, to the extent obtainable, to the effect that: (i) any loss be payable notwithstanding any act or negligence of Lessor that might otherwise result in the forfeiture of the insurance; (ii) the insurer waives the right of subrogation against Lessor and against Lessor's agents and representatives; (iii) the policies are primary and noncontributing with any insurance that may be carried by Lessor; and (iv) they cannot be cancelled or materially changed except after ten (10) days' written notice by the insurer to the Lessor or Lessor's designated representative. Lessee shall furnish Lessor with copies of all such required insurance policies promptly upon receipt of them or with certificates evidencing such insurance. Lessee agrees that if for any reason such insurance is not in full force and effect, then, in such event, Lessor may obtain the necessary insurance, pay the premium thereon and the repayment thereof shall be deemed additional rent payable as such on the next date upon which Base Rent becomes due. Lessee shall, prior to opening business in the Premises, furnish from the insurers providing the above referred to coverage, certificates of such coverage evidencing the existence and amounts of such insurance.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

## 28. FIRE, CASUALTY AND EXTENDED COVERAGE INSURANCE

(a) **Lessee's Obligations To Insure Its Fixtures And Equipment.** On the commencement of and throughout the term hereof Lessee shall take out and maintain on all of its trade fixtures, appliances and equipment in and on the Premises, a policy or policies of fire insurance with standard extended coverage and vandalism and malicious mischief endorsements to the extent of at least ninety percent (90%) of their full replacement value. In event of loss or damage, the proceeds from any such policy or policies shall be used by Lessee for the replacement of the Lessee's personal property and/or the repair or replacement of the Lessee's trade fixtures, machinery and equipment so insured, in the event this lease is to continue in existence under the provisions of Paragraph 28, otherwise if said lease is terminated, to be paid to Lessee.

(b) **Lessee to Maintain Insurance on the Premises.** Lessee, at Lessee's cost, shall maintain on the Premises exclusive of plate glass a policy of standard fire and extended coverage insurance with vandalism and malicious mischief endorsements to the extent of 100% of full replacement value. The "full replacement value" of the building to be insured under this section shall be determined by the company issuing the insurance policy at the time the policy is initially obtained.

(c) **Waiver of Subrogation.** Lessee hereby releases and relieves and waives its entire right of recovery against the Lessor for loss or damage arising out of or incident to the perils insured against under paragraph (a) above which perils occur in, on or about the Premises, whether due to the negligence of Lessor or Lessee or their agents, employees, contractors and/or invitees. Lessee shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carrier or carriers that the foregoing waiver of subrogation is contained in this Lease.

## 29. DAMAGE OR DESTRUCTION - OBLIGATIONS TO RESTORE, ETC.

(a) **Loss Due to Risk Covered by Insurance.** In the event of damage or destruction of the Premises by an insured fire or casualty loss, Lessor shall forthwith repair, rebuild and/or restore the same, provided such repairs, rebuilding and/or restoration can be made and completed within one hundred and eighty (180) calendar days from the date construction of repairs, rebuilding and/or restoration begins, and can be done under the then laws and regulations of state, federal, county or municipal authorities, but such damage or destruction shall in no way annul or void this lease, except that Lessee shall be entitled to an abatement of or a proportionate reduction, as the case may be, of the monthly Base Rent while such repairs, rebuilding and/or reconstruction are being made, such proportionate reduction to be based on the extent to which the damage or destruction shall interfere with Lessee's business and operations on the Premises. If such repairs, rebuilding and/or restoration cannot be made in the period of time stated above or cannot be done under the then laws and regulations, Lessee may by written notice to Lessor given within thirty (30) days of such occurrence forthwith terminate this lease and if Lessee fails to terminate, then Lessor may, at his option within forty-five (45) days after such occurrence, by written notice to Lessee, either terminate this Lease or make the repairs or restoration within a reasonable time, in which latter event this lease shall continue in full force and effect with the monthly rent and other sums due hereunder proportionately reduced as provided in this paragraph. If Lessor undertakes to repair or restore the Premises, Lessee shall make available to Lessor for such purpose any insurance proceeds received by Lessee for damage or destruction to leasehold improvements made by Lessee to the Premises and Lessor's work shall restore the leasehold improvements to the extent that there are insurance proceeds available for such purpose. Lessor shall not be required to restore Lessee's trade fixtures and personal property, such excluded items being the sole responsibility of Lessee to restore. If Lessor elects to repair, rebuild and/or restore the Premises,

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

or if Lessee elects to pay to Lessor the difference between five percent (5%) of the then replacement value of the building and/or improvement damaged or destroyed, then Lessee shall be entitled to an abatement of or a proportionate reduction, as the case may be, of the Monthly Base Rent while such repairs, rebuilding and/or reconstructions are being made, such proportionate reduction to be based on the extent to which the damage or destruction shall interfere with Lessee's business and operations on the Premises.

(b)   **Loss Due to Risk Not Covered By Insurance.** If the Premises shall be damaged or destroyed by a risk not covered and insured against by fire and casualty insurance Lessor shall forthwith and with due diligence repair, rebuild and/or restore the same unless the then cost of such repairs and/or reconstruction shall amount to five percent (5%) or more of the then replacement value of the building and/or improvement damaged or destroyed, in which latter event Lessor shall have the option (giving notice thereof to Lessee within fifteen (15) days after ascertaining the repairs, rebuilding and/or restoration costs and replacement value) whether to terminate this Lease or to proceed with the reconstruction; provided, however, should Lessor elect to terminate this Lease, Lessee shall have the option within fifteen (15) days after Lessor's notice to terminate this Lease, to elect to pay to Lessor at the time Lessee notifies Lessor of its election herein the difference between five percent (5%) of the then replacement value of the building and/or improvement damaged or destroyed and the actual cost to Lessor in repairing, rebuilding and/or restoring the building and other improvements, in which event Lessor shall forthwith commence said repairs, rebuilding and reconstruction. It is agreed that the amount payable by Lessor under these provisions shall be the only monies to be paid by Lessor with respect to such work of restoration, and shall not be payable by Lessor until Lessee shall have paid to Lessor its required contribution to the costs and expenses thereof. If Lessor elects to terminate this Lease, and if Lessee does not elect to contribute toward the cost of reconstruction within the time and manner provided herein, this lease shall forthwith terminate and the parties shall be relieved of further liability hereunder. If Lessor elects to repair, rebuild and/or restore the Premises, or if Lessee elects to pay to Lessor the difference between five percent (5%) of the then replacement value of the building and/or improvement damaged or destroyed, then Lessee shall be entitled to an abatement of or a proportionate reduction, as the case may be, of the Monthly Base Rent while such repairs, rebuilding and/or reconstructions are being made, such proportionate reduction to be based on the extent to which the damage or destruction shall interfere with Lessee's business and operations on the Premises.

(c)   **Waiver of Civil Code Sections.** In respect to any damage or destruction to the Premises under the terms of this paragraph, the provisions of Section 1932, Subdivision 2, and of Section 1933, Subdivision 4 of the Civil Code of the State of California are waived by Lessee.

(d)   **Loss During Last Part of Term.** In the event damage or destruction to the Premises shall occur during the last six (6) months of the term of this lease or of any extended term, Lessor may terminate this Lease by notice to the Lessee given not more than fifteen (15) days after the damage or destruction, provided, however, in the event the damage or destruction shall occur during the last six (6) months of the term, and if Lessee is given by the terms hereof an option to extend this lease and exercises said option within fifteen (15) days following the damage or destruction, then Lessor shall repair, rebuild and/or restore the Premises as provided in subparagraphs (a) and (b) of this paragraph and rent shall abate as provided therein. Should this Lease not be terminated as provided in this subparagraph, then this Lease shall continue in full

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

force and effect.

### 30.    SURRENDER UPON TERMINATION

At the expiration of the term of this Lease, or upon the earlier termination thereof for any reason, the Lessee shall quit and surrender said leased Premises to the Lessor in as good state and condition as said Premises are in when possession thereof is given to the Lessee, reasonable wear and tear and damage by the elements, fire and other casualty excepted, and the Lessor shall thereupon have the right to enter upon and take possession of said Premises and said leased personal property.

### 31.    HOLDING OVER

If Lessee should remain in possession of the Premises after the expiration of the Lease term and without executing a new Lease, then such holding over shall be construed as a tenancy from month to month, subject to all conditions, provisions and obligations of this Lease insofar as the same are applicable to a month to month tenancy. However, the Base rental amount shall be one hundred and fifty percent (150%) of the then current monthly rental rate.

### 32.    DEFAULT

(a)    **Lessee's Default** The occurrence of any of the following shall constitute a default by Lessee:

(1)    Failure to pay Base Rent or any other payment required of Lessee when due, if the failure continues for three (3) days after notice has been given to Lessee.

(2)    Abandonment and vacation of the Premises (failure to occupy and operate the Premises for seven (7) consecutive days shall be deemed an abandonment and vacation.)

(3)    Failure to perform any other provision of this Lease if the failure to perform is not cured within ten (10) days after notice has been given to Lessee. If the default cannot reasonably be cured within ten (10) days, Lessee shall not be in default of this Lease if Lessee commences to cure the default within the 10-day period and diligently and in good faith continues to cure the default.

(4)    The discovery by Lessor that any financial statement given to Lessor by Lessee, any assignee of Lessee, any subtenant of Lessee, any successor in interest of Lessee or any guarantor of Lessee's obligation hereunder, and any of them was materially false.

(5)    The filing of a petition in bankruptcy by any guarantor of Lessee's obligations hereunder and the failure within ten days after written notice from Lessor to Lessee to provide the substitute guarantor of Lessee's obligation hereunder satisfactory to Lessor.

Notices given under this paragraph shall specify the alleged default and shall demand that Lessee perform the provisions of this lease or pay the rent amount that is in arrears, as the case may be, within the applicable period of time, or quit the Premises. No such notice shall be deemed a forfeiture or a termination of this Lease unless Lessor so elects in the notice.

(b)    **Lessor's Remedies.** Lessor shall have the following remedies if Lessee commits a default. These remedies are not exclusive; they are cumulative in addition to any remedies now or later allowed by law:

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

(1)     Lessor can continue this Lease in full force and effect, and the Lease will continue in effect as long as Lessor does not terminate Lessee's right to possession, and Lessor shall have the right to collect rental amounts when due. During the period Lessee is in default, Lessor can enter the Premises and relet them, or any part of them, to third parties for Lessee's account. Lessee shall be liable immediately to Lessor for all costs Lessor incurs in reletting the Premises, including without limitation, broker's commissions, expense of remodeling the Premises required by the reletting, and like costs. Reletting can be for a period shorter or longer than the remaining term of this Lease. Lessee shall pay to Lessor the rental amounts due under this Lease on the dates the rent is due, less the rent Lessor receives from any reletting. No act by Lessor allowed by this paragraph shall terminate this Lease unless Lessor notifies Lessee that Lessor elects to terminate this Lease. After Lessee's default and for as long as Lessor does not terminate Lessee's right to possession of the Premises, if Lessee obtains Lessor's consent, Lessee shall have the right to assign or sublet its interest in this Lease, but Lessee shall not be released from liability. Lessor's consent to a proposed assignment or subletting shall not be unreasonably withheld.

(2)     Lessor can terminate Lessee's right to possession of the Premises at any time. No act by Lessor other than giving notice to Lessee shall terminate this Lease. Act of maintenance, efforts to relet the Premises, or the appointment of a receiver on Lessor's initiative to protect Lessor's interest under this Lease shall not constitute a termination of Lessee's right to possession. On termination, Lessor, has the right to recover from Lessee:

(i.)     The worth, at the time of the award, of the unpaid rent that had been earned at the time of termination of this Lease;

(ii.)    The worth, at the time of the award, of the amount by which the unpaid rent that would have been earned after the date of termination of this Lease until the time of award exceeds the amount of the loss of rent that Lessee proves could have been reasonably avoided;

(iii.)   The worth, at the time of the award, of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of the loss of rent that Lessee proves could have been reasonably avoided; and

(iv.)    Any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform Lessee's obligations hereunder, including court costs.

"The worth, at the time of the award," as used in (i) and (ii) of this paragraph, is to be computed by allowing interest at the maximum rate an individual is permitted by law to charge. "The worth, at the time of the award," as referred to in (iii) of this paragraph, is to be computed by discounting the amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of the award, plus one percent (1%).

(c)     **Appointment of Receiver.** Neither the filing of a petition for the appointment of a receiver nor the appointment itself shall constitute an election by Lessor to terminate this Lease.

(d)     **Lessor's Right to Cure Lessee's Default.** Lessor, at any time after Lessee commits a default, can cure the default at Lessee's cost. If Lessor at any time, by reason of Lessee's default, pays any sum or does any act that requires the payment of any sum, the sum paid by Lessor shall be due immediately from Lessee to Lessor at the time the sum is paid, and if paid at a later date shall bear interest at the lesser of 10% or maximum rate an individual is permitted by law to

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

charge from the date the sum is paid by Lessor until Lessor is reimbursed by Lessee. The sum, together with interest on it, shall be additional rent.

33.   **CONDEMNATION**

a)   **Effective Total Condemnation.**

(1)   In the event that there shall be a total taking of the leased Premises during the Lease term, or any extension thereof, under the power of eminent domain, the leasehold estate hereby created shall cease and terminate as of the date actual physical possession of the leased Premises is taken by the condemnor.

(2)   All compensation and damages awarded for such total taking shall belong to and be the sole property of Lessor, and Lessee shall have no claim thereto and hereby irrevocably assigns and transfers to Lessor any right they might have to compensation or damages to which they may become entitled; provided, however, that Lessee shall be entitled to receive any award made for the taking of or damage to Lessee's trade fixtures and any improvements made by Lessee to the leased Premises which Lessee would have had, but for the condemnation, the right to remove on expiration or sooner termination of this Lease.

(3)   On termination of this Lease by a total taking of the leased Premises under the power of eminent domain, all rentals and other charges payable by Lessee to or on behalf of Lessor under the provisions of this Lease shall be paid up to the date on which actual physical possession of the leased Premises shall be taken by the condemnor, and the parties hereto shall thereafter be released from any further liability in relation thereto.

b)   **Effective Partial Condemnation.**

(1)   In the event that there shall be a partial taking of the leased Premises during the Lease term or any extension thereof under the power of eminent domain, this Lease shall terminate as to the portion of the leased Premises so taken on the date when actual physical possession of said portion is taken by the condemnor, but this Lease shall, at Lessor's option, continue in force and effect as to the remainder of the leased Premises provided the remainder is suitable for Lessee's business purposes, and provided further that the rental payable by Lessee for the balance of said term shall be abated in the ratio that the square footage of floor space of the leased premises taken bears to the total floor space of the leased premises occupied by Lessee at the time of such taking.

On such partial condemnation as in this subsection provided, all compensation and damages awarded for such partial taking shall belong to and be the sole property of Lessor, and Lessee shall have no claim thereto and hereby irrevocably assigns and transfers to Lessor any right they may have to compensation or damages for property condemned; provided, however, that Lessee shall be entitled to receive any award made for the taking of or damage to Lessee's trade fixtures and any improvements made by Lessee to the leased premises which Lessee would have, but for the condemnation, the right to remove on expiration or sooner termination of this Lease.

(2)   On termination of this Lease in whole or in part as herein provided, all rentals and

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

other charges payable by Lessee to or on behalf of Lessor hereunder shall be paid up to the date on which actual physical possession shall be taken by the condemnor and in the event that the Lease is totally terminated, the parties hereto shall thereafter be released from all further liability in relation thereto, and in the event that the Lease is only partially terminated, Lessee shall thereafter be liable only for that portion of rent required for the balance of the Lease term as in this subsection provided.

34.    **NOTICES**

In the event that any notice is to be given under this Lease by either party hereto to the other, either expressly required to be given in writing, or such notice as such party may desire to give, such notice may be given by either personally delivering the same to the other or by mailing such notice by certified or registered mail with return receipt requested thereon, in a sealed envelope with all postage and certification charges thereon prepaid, addressed as follows:

    If to Lessor:                          Acme & Son Sanitation, Inc

                                           c/o Daniel Youngblood, Sr.
                                           P.O. Box 488
                                           Ben Lomond, CA 95005

or to such other address as Lessor may hereafter notify Lessee in writing.

    If to Lessee:

                                           c/o United Site Services, Inc.
                                           200 Friberg Parkway, Suite 4000
                                           Westboro, MA 01582
                                           Attn: Ronald Parlengas

or to such other address as Lessee may hereafter notify Lessor in writing.

    The deposit of such notice in a United States Post Office as herein provided, postage prepaid, shall constitute said notice, and the time of performance of any act or obligation required to be made after said notice under the terms of this Lease, shall commence to run from the date of the deposit of said notice in a United States post office in the State of California.

35.    **SALE OF PREMISES**

    If Lessor sells or transfers all or any portion of land, Lessor on consummation of the sale or transfer, shall be released from any liability thereafter accruing under this Lease if Lessor's successor has assumed in writing, for the benefit of Lessee, Lessor's obligations under this Lease.

36.    **SUBORDINATION**

    (a)    Provided that Lessor obtains the non-disturbance agreement described herein, this Lease, at Lessor's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

Page 17 of 21

hypothecation or security now or hereafter placed upon the real property of which the Premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof. Notwithstanding such subordination, Lessee's right to quiet possession of the Premises shall not be disturbed if Lessee is not in default and so long as Lessee shall pay the Base Rent and observe and perform all of the provisions of this Lease, unless this Lease is otherwise terminated pursuant to its terms. Lessor shall obtain and deliver to Lessee, in recordable form, such a non-disturbance agreement from any such ground lessor, mortgagee or other third party to whose interest this Lease shall be subordinate. If any mortgagee, trustee or ground lessor shall elect to have this Lease prior to the lien of its mortgage, deed of trust or ground lease, and shall give written notice thereof to Lessee, this Lease shall be deemed prior to such mortgage, deed of trust, or ground lease, whether this Lease is dated prior or subsequent to the date of said mortgage, deed of trust or ground lease or the date of recording thereof.

**(b)**    Lessee agrees to execute any documents required to effectuate an attornment, a subordination or to make this Lease prior to the lien of any mortgage, deed of trust or ground lease, as the case may be. Lessee's failure to execute such documents within 10 days after written demand shall constitute a material default by Lessee hereunder, or, at Lessor's option, Lessor shall execute such documents on behalf of Lessee as Lessee's attorney-in-fact. Lessee does hereby make, constitute and irrevocably appoint Lessor as Lessee's attorney-in-fact and in Lessee's name, place and stead, to execute such documents in accordance with this paragraph.

## 37.    PERSONAL PROPERTY LEFT ON PREMISES AT LEASE TERMINATION

On expiration of the term of this Lease, or upon the earlier termination thereof for any reason, Lessor can elect to retain or dispose of in any manner, any of Lessee's personal property or equipment that Lessee does not remove from the Premises by giving at least thirty (30) days notice to Lessee. Lessee waives any and all claims against Lessor for any damage to Lessee resulting from Lessor's retention or disposition of such personal property items. Lessee shall be liable to Lessor for all of Lessor's costs and expenses for storing, removing, and disposing of any of Lessee's personal property left on the Premises. Lessor shall be entitled to charge reasonable rental for the storage of any personal property and equipment left on the Premises by Lessee whether claimed to be the property of Lessee or others.

## 38.    BREACH OF SECURITY

Lessee shall be solely and exclusively responsible for the security of its personal property on the Premises and shall be solely and exclusively liable to Lessor for any and all damages resulting thereto from any breach of security including property damage and personal liability, whether caused by burglary, robbery or such other breaches of security and specifically including any damage due to any break-ins through the roof. Lessee further agrees to waive any rights against Lessor by way of subrogation on behalf of Lessee's insurance carrier in the event of any such security breach, such waiver to extend to Lessor's insurance carrier.

## 39.    ATTORNEY'S FEES AND COSTS

If Lessor is required to employ the services of an attorney to enforce any of the terms and conditions of this Lease, Lessor shall be entitled to recover from Lessee all Lessor's costs and fees incurred in connection with the employment of such attorney including, but not limited to, all costs incurred in connection with any action or proceeding or any post judgment proceeding.

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

## 40.   MISCELLANEOUS PROVISIONS

(a)   **Paragraph Headings.** The paragraph and subparagraph headings of this Lease are not a part of this Lease and shall have no effect upon the construction or interpretation of any part of this Lease.

(b)   **Integrated Agreement; Modification.** This Lease contains all of the agreements and conditions made between the parties hereto and may not be modified orally or in any other manner than by an agreement in writing signed by all of the parties to this Lease or their respective successors in interest. Notwithstanding anything in this Lease to the contrary, nothing in this Lease shall be deemed to modify any of the obligations of Acme & Sons Sanitation, Inc. (the "Seller") or the rights of United Site Services, Inc. (the "Buyer") under the Asset Purchase Agreement dated August 12, 2005, among the Seller, Buyer and Seller's Principals named therein.

(c)   **Time of Essence.** Time is of the essence of each term and provision of this Lease.

(d)   **All Required Payments Are Additional Rent.** Except as otherwise expressly stated, each payment required to be made by Lessee shall be in addition to and not in substitution for other payments to be made by Lessee and all such payments shall be deemed to be additional rental.

(e)   **Severability.** The invalidity or illegality of any provision shall not affect the remainder of this Lease.

(f)   **Duration of Obligations.** Unless otherwise stated in particular provisions of this Lease, an obligation resulting from the Lease or from the relationship created by the Lease, is coterminous with the Lease, except that defaults occurring during the term of this Lease are actionable until the expiration of the period of limitations.

(g)   **WAIVER OF RIGHT TO TRIAL BY JURY.** LESSOR AND LESSEE HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION, PROCEEDING AND/OR HEARING BROUGHT BY EITHER LESSOR AGAINST LESSEE OR LESSEE AGAINST LESSOR ON ANY MATTER WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE RELATIONSHIP OF LESSOR AND LESSEE, LESSEE'S USE OR OCCUPANCY OF THE PREMISES, OR ANY CLAIM OF INJURY OR DAMAGE, OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY LAW, STATUTE OR REGULATION, EMERGENCY OR OTHERWISE, NOW OR HEREAFTER IN EFFECT.

(h)   **Joint and Several** Liability. In the event two or more persons or entities execute this Lease as "Lessee", then the obligation of each such person shall be joint and several.

(i)   **Guarantor.** In the event that there is a guarantor of this Lease, said guarantor shall have the same obligations as Lessee under this Lease. In the event the guarantor files a petition in bankruptcy in any court, Lessor, in Lessor's sole discretion, may terminate this Lease unless Lessee, within ten days after notification from Lessor, provides a new guarantor satisfactory to Lessor.

(j)   **Covenants or Conditions.** All the agreements in this Lease upon the part of Lessee, whether technically covenants or conditions, shall be deemed conditions for the purpose hereof

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

(k) **Authority.** If Lessee is a corporation, trust or general or limited partnership, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of said entity. If Lessee is a corporation, trust or partnership, Lessee shall, within thirty (30) days after execution of this lease, deliver to Lessor evidence of such authority satisfactory to Lessor.

(l) **Waivers.** No waiver by Lessor of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Lessee of the same or any other provision. Lessor's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to or approval of any subsequent act by Lessee. The acceptance of Base Rent, or partial payment hereunder by Lessor shall not be a waiver of any preceding breach by Lessee of any provision hereof, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.

(m) **Words.** Whenever the singular is used in this Lease, the same shall include the plural when required by the context, and the masculine gender shall include the feminine and neuter genders, and the word "person" shall include corporation, firm and association. If there is more than one Lessee, the obligations of this Lease shall be joint and several.

(n) **California** Law. This Lease shall be governed and interpreted solely by the laws of the State of California. Any litigation related to this Lease shall be filed in Santa Clara County Superior Court.

(o) **Heirs, Etc.** This Lease shall be binding upon the successors, administrators and assigns of the respective parties hereto.

(p) **Exhibits.** All exhibits, if any, that are attached to this Lease are hereby incorporated into the body of this Lease.

(q) **No Real Estate Brokers or Finders' Fees.** Lessor has not had any dealings with any real estate broker, finder, or other person with respect to this Lease in any manner and owes no commissions or fees in such regard. Lessee is solely responsible for any compensation due its agent. Lessee shall hold harmless Lessor from all damages resulting from any claims that may be asserted against Lessor by any broker, finder, or other person regarding this Lease.

(r) Lessor shall provide Lessee such affidavits regarding mechanics liens and parties in possession, and take such actions as Lessee may reasonably request, for Lessee to obtain a leasehold title insurance policy on the leased premises.

Executed on Next Page

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

IN WITNESS WHEREOF the Lessor and Lessee have hereunto executed this Lease in duplicate the day and year first above written.

Lessor: Acme & Sons Sanitation, Inc.,

a California corporation

by _____

Frank Youngblood– President

Dated: _____

Lessee: United Site Services of California, Inc.,

a California corporation

by _____

,

Dated: _____

C:\wp\data\disks\CRR\Acme & Sons\leases\Acme Lease For Hilcap 052005-sjr3.doc

IN WITNESS WHEREOF the Lessor and Lessee have hereunto executed this Lease in duplicate the day and year first above written.

Lessor: Acme & Sons Sanitation, Inc.,

a California corporation

by _____

Frank Youngblood– President

Dated: _____

Lessee: United Site Services of California, Inc.,

a California corporation

by _____

Dated: _August 1, 2005_

Our File No: SLC05007880

# EXHIBIT "A"

Parcel One:

(An unincorporated area of Santa Clara County)

Beginning on the westerly line of a 56.71 acre tract of land described in the Deed of Trust dated October 15, 1903 and recorded in Liber "Y", Page 561, of Trust Deeds, Santa Clara County Records, at the most northerly corner of that certain 5 acre parcel of land described in the deed from Carl W. Heyne to Irving R. Fontaine, et ux, as recorded May 4, 1955 in Book 3159, Page 292, Official Records, Santa Clara County Records; thence along said westerly line the following courses and distances: North 48° 24' 35" East 63.74 feet, North 39° 06' 35" East 104.28 feet and North 30° 39' 35" East 84.18 feet; thence leaving said westerly line of the 55.71 acre tract and running parallel with the northeasterly line of said 5 acre parcel South 36° 40' 50" East 661.42 feet to a ¾" iron pipe; thence South 26° 00' 10" West 261.56 feet to a ¾" iron pipe; thence South 53° 47' 23" West 330 feet to a point on the southeasterly prolongation of the southwesterly line of said 5 acre parcel; thence along said southeasterly prolongation North 36° 40' 50" West 30.45 feet to the most southerly corner of said 5 acre parcel; thence along the southeasterly line of said 5 acre parcel North 53° 19' 10" East 320.10 feet to the most easterly corner thereof; thence along the northeasterly line of said 5 acre parcel North 36° 40' 50" West 684.81 feet to the point of beginning.

Said land also being depicted on that certain Record of Survey recorded January 30, 1968 in Book 232, Page 47, of Maps, Santa Clara County Records

Parcel Two:

(An unincorporated area of Santa Clara County)

A portion of that 100 foot strip of land described in the Grant Deed dated March 18, 1886 and executed by W.L. Manley to the San Jose and Almaden Railroad Company recorded July 29, 1886 in Book 86, Page 150, of Deeds, more particularly described as follows:

All of that 100 foot strip of land lying south of the southern line of the land described in the deed from Southern Pacific Transportation Company, to Weetie Enterprises, LLC, a Delaware corporation recorded July 11, 1997, as Instrument No. 13770439, Official Records and northeasterly of the centerline of Hillcap Avenue as said avenue presently exists.

Excepting therefrom all mineral, and all mineral rights of every kind and character now known to exist or herein after discovered and all oil and gas, but without the right of surface entry or use upon the land as reserved in the Grant Deed, dated February 16, 1999 and executed by Union Pacific Railroad Company, recorded February 25, 1999, as Instrument No. 14672823, Official Records, Santa Clara County Records.

| | |
|---|---|
| Assessor's Parcel Numbers: | 462-17-002 and 462-17-022 |
| Joint Plant Number: | 462-17-002 and 462-17-005 |